UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.

                   Plaintiff,

v.

WARREN C. EVANS, In his Official
Capacity as Sheriff of Wayne County

                   Defendant.

_____/

Case No. 2:09-cv-12224

Hon. Denise Page Hood

Michigan Protection & Advocacy Service, Inc.
Chris E. Davis (P52159)
29200 Vassar Blvd., Suite 200
Livonia, MI  48152
Phone: (248) 473-2990
Email: cdavis@mpas.org
Attorney for Plaintiff

Department of Corporation Counsel
James M. Surowiec (P49560)
600 Randolph St., Suite 253
Detroit MI 48226
Phone: (313) 224-6682
Email:  jsurowiec@co.wayne.mi.us
Attorney for Defendant

_____/

**PLAINTIFF'S MOTION FOR SUBSTITUTION OF DEFENDANT, SUMMARY
JUDGMENT, PERMANENT INJUNCTION, AND COSTS/ATTORNEY FEES**

The Plaintiff, Michigan Protection and Advocacy Service (MPAS), requests this

Honorable Court issue a declaratory judgment and a permanent injunction, pursuant to 28

U.S.C. §§ 2201 and 2202, enforcing its rights under the federal protection and advocacy

laws, 42 U.S.C. § § 10807-10827, the Protection and Advocacy for Individuals with

Mental Illness Act of 1986 (PAIMI); 42 U.S.C. § 15043, Developmental Disabilities

Assistance and Bill of Rights (DD) Act of 2000, and ; 29 U.S.C. § 794e(f), the Protection

and Advocacy of Individual Rights (PAIR) Program of the Rehabilitation Act of 1973, as

amended.  Additionally, MPAS requests this Court award it attorney fees and costs

against the Defendant pursuant to 42 U.S.C. § 1988 for violation of its rights under 42

U.S.C. § 1983 and also Fed. R. Civ. P., Rule 54.

 For the reasons stated more fully in its attached brief, MPAS now moves for entry

of summary judgment under Fed. R. Civ. P., Rule 56.   Additionally, Plaintiff requests to

substitute the new Sheriff of Wayne County as the defendant in this matter pursuant to

Fed. R. Civ. P. Rule 25(d).


    Respectfully submitted,

Dated: September 3, 2009    s/Chris E. Davis
        MICHIGAN PROTECTION &
        ADVOCACY SERVICE, INC.
        Attorney for Plaintiff
        29200 Vassar Blvd., Suite 200
        Livonia, MI  48152
        (248) 473-2990
        cdavis@mpas.org
        P52159

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.

              Plaintiff,

v.

WARREN C. EVANS, In his Official
Capacity as Sheriff of Wayne County

              Defendant.

_____/

Case No. 2:09-cv-12224

Hon. Denise Page Hood

| | |
|---|---|
| Michigan Protection & Advocacy Service, Inc. | Department of Corporation Counsel |
| Chris E. Davis (P52159) | James M. Surowiec (P49560) |
| 29200 Vassar Blvd., Suite 200 | 600 Randolph St., Suite 253 |
| Livonia, MI  48152 | Detroit MI 48226 |
| Phone: (248) 473-2990 | Phone: (313) 224-6682 |
| Email: cdavis@mpas.org | Email:  jsurowiec@co.wayne.mi.us |
| Attorney for Plaintiff | Attorney for Defendant |

_____/

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUBSTITUTION OF
DEFENDANT, SUMMARY JUDGMENT, PERMANENT INJUNCTION, AND
COSTS/ATTORNEY FEES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ iii

QUESTIONS PRESENTED........................................................ vi

INTRODUCTION ...................................................................1

PARTIES ...............................................................................1

PROCEDURAL BACKGROUND...............................................2

BACKGROUND OF THE PROTECTION AND ADVOCACY SYSTEM ...................................2

FACTS .................................................................................5

ISSUES ................................................................................8

THE COURT MAY ISSUE A DECLARATORY JUDGMENT THAT A COUNTY SHERIFF'S OFFICE IS REQUIRED UNDER THE PROTECTION AND ADVOCACY STATUTES TO DISCLOSE TO THE STATE PROTECTION AND ADVOCACY SYSTEM ALL RECORDS RELATING TO TWO INMATES WHO COMMITTED SUICIDE WHILE IN THE COUNTY JAIL WHEN THERE IS NO KNOWN "LEGAL REPRESENTATIVE" FOR EITHER INDIVIDUAL.

1. Standard for Summary Judgment

2. The Inmates Are Persons Eligible For Services Under The P&A Statute

3. Jails are covered facilities under both the PAIMI and DD Acts

4. MPAS received a complaint and has probable cause to believe the individuals may have been subjected to abuse and/or neglect

5. Under PAIMI, MPAS is entitled to access to all records concerning eligible persons when conducting an investigation into potential abuse or neglect and MPAS is not required to seek consent when there is no known legal representative to ask and the facility has failed to identify any such person when requested

6. Under the DD and PAIR Acts MPAS is entitled to the records of an eligible person if the person dies and MPAS is not required to seek consent from anyone

THE COURT SHOULD ISSUE A PERMANENT INJUNCTION REQUIRING THE DEFENDANT TO DISCLOSE RECORDS TO THE STATE'S PROTECTION AND ADVOCACY SYSTEM WHEN THE PLAINTIFF WILL SUFFER IRREPARABLE HARM IF ITS FEDERAL MANDATES ARE INTERFERED WITH, THERE IS NO HARM TO THE DEFENDANT, AND IT IS IN PUBLIC'S INTEREST.

1.  Standard for Issuing a Permanent Injunction

2.  Balancing the Burdens on Each Party and Considering the Public Interest would favor the Court Granting Plaintiff's Request


THE DEFENDANT SHOULD BE ORDERED, PURSUANT TO 42 U.S.C. §1983, TO PAY PLAINTIFF'S REASONABLE COSTS AND ATTORNEY FEES WHEN THE DEFENDANT, ACTING UNDER COLOR OF LAW, HAS DENIED AND FRUSTRATED PLAINTIFF IN EXERCISING ITS RIGHTS UNDER FEDERAL LAW


CONCLUSION......................................................................................................................18

## TABLE OF AUTHORITIES

### CASES

*Advocacy Center v. Stalder,* 128 F. Supp. 2d 358 (M.D. La. 1999) .............................................18

*Alabama Disabilities Advocacy Program* v. *J.S. Tarwater Developmental Center*, 894 F. Supp. 424 (M.D. Ala. 1995), *aff'd* 97 F.3d 492 (11th Cir.1996).........................................4, 9, 10

*Anderson v. Liberty Lobby, Inc.*, 106 S.Ct 2505 (1986). ...................................................................8

*Audi AG v. D'Amato***,** 469 F.3d 534, 550 (6th Cir.Mich.2006) ..................................................14, 15

*Celotex Corp. v. Catrett*, 477 US. 317, 322-3; 106 S.Ct. 2548; 91 L.Ed.2d 265. (1986) ..............8

*Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003) ....................................4

*Connecticut Office of Protection and Advocacy v. Hartford Bd. of Ed.*, 355 F. Supp. 2d 649, 653 *aff'd on other grounds*, 464 F.3d 229 (2nd Cir. 2006) ...................................................15

*Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir.1995) ..................................................................8

*eBay Inc., et al. v. MercExchange, LLC,* 547 U.S. 388, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006) ...........................................................................................................................14

*Gonzaga University v. Doe,* 536 U.S. 273 (2002) ...................................................................17, 18

*Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs* (N.D. Iowa, June 14, 2002) ....................................................................................................................................14

*Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F.Supp.2d 1150 (June 25, 2001 N.D. Iowa) ...................................................................................15

*Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. 630, 2001 WL 1809404 (S.D. Iowa 2002) .................................................................................................................16

*Maryland Disability Law Center, Inc. v. Mount Washington Pediatric Hospital, Inc.* 106 Md. App. 55, 664 A. 2d 16 (Md. Ct. of Special App. 1995) ...........................................................4

*Michigan Protection & Advocacy Service, Inc. v. Miller*, 849 F. Supp. 1202 (W.D. Mich. 1994) .................................................................................................................................................4, 8

*Mississippi Protection & Advocacy System, Inc.* v. Cotten, 1989 WL 224953 (S.D.Miss1989), *aff'd,* 929 F. 2d 1054 (5th Cir 1991). ..............................................................4, 5

*Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303 (D. Conn. 2003) ................................................................................16

*Ohio Legal Rights Service v. Buckeye Ranch, Inc.,* 365 F.Supp.2d 877 (S.D.Ohio, 2005) ..........................................................................................................................15

*Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 228 F.3d 423 (3rd Cir. 2000)..............4

*Protection & Advocacy For Persons With Disabilities v. Armstrong*, 226 F.Supp.2d 303, 314 (D.Conn. 2003) ..................................................................................................8

*Robbins* v. *Budke* 739 F.Supp. 1479 (D.N.M. 1990) ....................................................4

*Street v. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) ............................................8

*Wisconsin Coalition for Advocacy, Inc. v. Busby*, No. 02-C-871 (E.D. Wi Sept. 24, 2003) ..........................................................................................................................15

*Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039 (E.D. Wi. 2001) ..........................................................................................................................15

## STATUTES AND RULES

20 U.S.C. § 1232 ...........................................................................................................17

29 U.S.C. § 705 ...............................................................................................................9

29 U.S.C. § 794...................................................................................................1, 4, 9,13

42 U.S.C. § 1983.....................................................................................1, 17, 18, 19

42 U.S.C. § 1988 ...............................................................................................17, 18

42 U.S.C. § 6000 ...............................................................................................................2

42 U.S.C. § 10543 ...........................................................................................................18

42 U.S.C. § 10801 .............................................................................................................3

42 U.S.C. § 10802...........................................................................................................8

42 U.S.C. § 10805 ...............................................................................5, 10, 11, 13,18

42 U.S.C. § § 10807-10827 ...............................................................................................1

42 U.S.C. § 12102 ..................................................................................................................9

42 U.S.C. § 15043 ..................................................................................................1, 5, 13, 14

42 U.S.C. § 15102 ..................................................................................................................9
34 C.F.R. § 381.5 ...................................................................................................................9

42 C.F.R. § 51.2 ........................................................................................................9, 10, 12

42 C.F.R. § 51.41 .................................................................................................................11

42 C.F.R. § 51.43 .................................................................................................................12

45 C.F.R. § 51.7 .....................................................................................................................8

45 C.F.R. § 1386.19 .............................................................................................................10


Fed. R. Civ. P. 25 ...................................................................................................................1

Fed. R. Civ. P. 54 .................................................................................................................18

Fed. R. Civ. P. 65 .................................................................................................................14

M.C.L. 51.75 ...........................................................................................................................1

M.C.L. 330.1931 .................................................................................................................1, 2

MI Const.Art.7, § 4 ................................................................................................................1

## OTHER AUTHORITIES

191 A.L.R. Fed 205 (org. 2004) .............................................................................................2

193 A.L.R. Fed 513 (org. 2003) .............................................................................................2

Cong. Hearings No. 99-50, Pt. II (1985)(Staff Report) ........................................................3

## **QUESTIONS PRESENTED**

1.      SHOULD THE COURT ISSUE A DECLARATORY JUDGMENT THAT A COUNTY SHERIFF'S OFFICE IS REQUIRED UNDER THE PROTECTION AND ADVOCACY STATUTES TO DISCLOSE TO THE STATE PROTECTION AND ADVOCACY SYSTEM ALL RECORDS RELATING TO TWO INMATES WHO COMMITTED SUICIDE WHILE IN THE COUNTY JAIL WHEN THERE IS NO KNOWN "LEGAL REPRESENTATIVE" FOR EITHER INDIVIDUAL?

        Plaintiff answers:  Yes.

        This Court should answer:  Yes.

2.      SHOULD THE COURT ISSUE A PERMANENT INJUNCTION REQUIRING THE DEFENDANT TO DISCLOSE RECORDS TO THE STATE'S PROTECTION AND ADVOCACY SYSTEM WHEN THE PLAINTIFF WILL SUFFER IRREPARABLE HARM IF ITS FEDERAL MANDATES ARE INTERFERED WITH, THERE IS NO HARM TO THE DEFENDANT, AND IT IS IN PUBLIC'S INTEREST?

        Plaintiff answers:  Yes.

        This Court should answer:  Yes.

3.      SHOULD THE DEFENDANT BE ORDERED, PURSUANT TO 42 U.S.C. §1983, TO PAY PLAINTIFF'S REASONABLE COSTS AND ATTORNEY FEES WHEN THE DEFENDANT, ACTING UNDER COLOR OF LAW, HAS DENIED AND FRUSTRATED PLAINTIFF IN EXERCISING ITS RIGHTS UNDER FEDERAL LAW?

        Plaintiff answers:  Yes.

        This Court should answer:  Yes.

INTRODUCTION

The Plaintiff, Michigan Protection and Advocacy Service, Inc. (MPAS), requests this Honorable Court grant summary judgment with declaratory judgment of its rights and a permanent injunction enforcing its rights under the federal protection and advocacy laws, 42 U.S.C. § § 10807-10827, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (PAIMI); 42 U.S.C. § 15043, Developmental Disabilities Assistance and Bill of Rights (DD) Act of 2000, and ; 29 U.S.C. § 794e(f), the Protection and Advocacy of Individual Rights (PAIR) Program of the Rehabilitation Act of 1973, as amended, against the Defendant for denying MPAS access to records concerning the deaths of two inmates at the Wayne County Jail.  Additionally, MPAS requests this Court award it attorney fees and costs against the Defendant for violation of 42 U.S.C. § 1983 and pursuant to 42 U.S.C. §1988.

PARTIES

At the present time Warren C. Evans is no longer the Wayne County Sheriff.  He recently resigned his position as sheriff in order to become the Chief of Police for the City of Detroit.  However, this action was brought against him in his official capacity.   A new Sheriff was named on July 24, 2009.  MPAS seeks to substitute Benny Napolean, the new Sheriff, as defendant in place of Chief Evans pursuant to Fed. R. Civ. P. 25(d).

Benny Napoleon is the Sheriff of Wayne County, Michigan, and acts as such pursuant to the provisions in the State Constitution, MI Const. Art. 7, § 4. Additionally, Defendant has responsibility for the operation of the jails within Wayne County, Michigan, pursuant to M.C.L. 51.75.

Plaintiff MPAS is a non-profit Michigan corporation who has offices located in Lansing (main), Livonia, and Marquette, Michigan.  The Governor of Michigan has designated MPAS as the state's protection and advocacy system, pursuant to M.C.L. 330.1931 (1) with the responsibility to enforce and carry out the federal mandates under the PAIMI, DD Act and PAIR Acts.  As the state's protection and advocacy system MPAS is required to and has the responsibility to monitor facilities and investigate allegations of abuse and neglect of persons with disabilities.  M.C.L.A. 330.1931 (2).

PROCEDURAL BACKGROUND

MPAS filed this complaint on June 9, 2009, seeking a declaratory judgment, and injunction and its costs and attorney fees. Pursuant to a stipulation of the parties and an order of the court [Docket Item # 13], the default of Defendant was set-aside, service of process was acknowledged as of August 3, 2009.  Pursuant to said stipulation Defendant filed a timely answer on August 12, 2009.  MPAS now moves for entry of summary judgment under Fed. R. Civ. P. 56.

BACKGROUND OF THE PROTECTION AND ADVOCACY SYSTEM

Shocked by the inhumane and despicable conditions at New York's Willowbrook State School and other similar facilities, Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act of 1975 (DD Act) to protect the human and civil rights of this population. 42 U.S.C. 6000 et seq.[1]

As an integral component of this Act, the Protection and Advocacy (P&A) System was established to ensure that these protections became a reality. In 2000,

---

[1] The P&A access authorities have been reviewed in some legal publications. See, e.g., "Validity, Construction, and Operation of Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C.A. Sections 10801 et seq.," 191 A.L.R. Fed 205 (org. 2004); "Validity, Construction, and Operation of Developmental Disabilities Assistance and Bill of Rights Act" 193 A.L.R Fed 513 (org. 2003).

Congress passed the Developmental Disabilities Assistance and Bill of Rights Act of 2000, which repealed and replaced in its entirety the 1975 Act. This version of the DD Act enhanced the access authorities of P&As in a number of respects.

Following congressional hearings and investigations, which substantiated numerous reports of abuse and neglect in state psychiatric facilities, Congress passed the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act of 1986. 42 U.S.C. 10801 et seq. Congressional investigations found a myriad of examples from across the country of instances of abuse and neglect, including sexual and financial exploitation; inadequate nutrition, healthcare and discharge planning; and generally deplorable living conditions. See *Examining the Issues Related to the Care and Treatment of the Nation's Institutionalized Mentally Disabled Persons: Joint Hearings Before the Comm. On Labor and Human Resources and the Subcomm. On Labor, Health and Human Services, Education and Related Agencies of the Senate Comm. On Appropriations*, S. Hrg. No. 99-50, Pt. II (1985) (Staff Report). These conclusions are mirrored in the PAIMI Act's Statement of Purpose section, which states in part that "Congress finds that [i]ndividuals with mental illness are vulnerable to abuse and serious injury" and that "State systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate." 42 U.S.C. § 10801(a)(1) and (4).

The PAIMI Act –modeled after the 1975 DD Act – provides parallel protections for individuals with mental illness using the same mechanisms as the DD Act. Under an additional statutory program (established under the Rehabilitation Act), the Protection and Advocacy for Individual Rights (PAIR) Program, P&As are authorized to use the

3

same authorities – including access to records, as provided under the DD Act – to serve

persons with disabilities who are not eligible under either the DD or PAIMI Acts. 29

U.S.C. § 794e(f)(2).

Courts have uniformly held that the P&A access authorities require facilities to

permit the P&A to operate effectively, and with broad discretion and independence in

gaining access to individuals, facilities, and records for investigative purposes. See, e.g.

the following cases, which are discussed in later sections: *Center for Legal Advocacy v.

Hammons*, 323 F.3d 1262 (10th Cir. 2003); *Pennsylvania Protection and Advocacy, Inc.

v. Houstoun*, 228 F.3d 423 (3rd Cir. 2000); *Alabama Disabilities Advocacy Program* v.

*J.S. Tarwater Developmental Center*, 894 F. Supp. 424 (M.D. Ala. 1995), *aff'd* 97 F.3d

492 (11th Cir.1996); *Mississippi Protection & Advocacy System, Inc.* v. *Cotten*, 1989 WL

224953 (S.D.Miss. 1989), *aff'd,* 929 F. 2d 1054 (5th Cir 1991); *Robbins* v. *Budke* 739

F.Supp. 1479 (D.N.M. 1990); *Michigan Protection & Advocacy Service, Inc. v. Miller*,

849 F. Supp. 1202 (W.D. Mi 1994); *Maryland Disability Law Center, Inc. v. Mount

Washington Pediatric Hospital, Inc.* 106 Md. App. 55, 664 A. 2d 16 (Md. Ct. of Special

App. 1995).

For instance, in *Cotten, supra*, the court ruled (under the DD Act) that facilities

have an affirmative duty to implement policies and practices which promote effective

access by P&As to their residents. The court described this obligation as follows:

> [The DD Act] gives to the institutionalized developmentally disabled the
> right to an effective protection and advocacy system.… The Act not only
> describes the range of services to be provided by the protection and
> advocacy systems, it also states that the systems "must have the authority"
> to perform these services. The state cannot satisfy the requirements of the
> [DD Act] by establishing a protection and advocacy system which has this
> authority in theory, but then taking action which prevents the system from
> exercising that authority.1989 WL 224953, at 9 (emphasis added).

4

In addition to having access to facilities both the PAIMI and DD Acts specify that a state's P & A System is to have access to the records of protected individuals. *See*, the DD Act at 42 U.S.C. §15043(a)(2)(I) and (J) and the PAIMI Act at 42 U.S.C. §10805(a)(4).

<u>FACTS</u>

On or about January 16, 2009, MPAS learned of the deaths of two inmates at the Wayne County Jail.

Both inmates committed suicide while in the custody of the Wayne County Sheriff's Department.  Inmate #1, initials CC, was found dead in his cell on the morning of January 15, 2009. Later news accounts indicated he committed suicide by hanging himself.  Inmate #2, whose identity is unknown, was found dead in his cell on the morning of January 14, 2009. EXHIBIT # 1.

County jails are supposed to have policies and procedures in place to screen inmates for suicidal tendencies and to prevent suicides.  The fact these inmates committed suicide indicates they had mental health issues that were not being addressed and therefore where possibly victims of abuse and/or neglect.

Based upon the information in the reports it received, MPAS determined it had probable cause to open an investigation into deaths of the two inmates. EXHIBIT # 2.

On or about January 28, 2009, MPAS advocate sent a request for records to Sheriff Warren C. Evans, requesting, "All documentation (including any incident reports, case notes, witness statements, mental health records, etc.) . . ." regarding each of the two inmates. This request was made pursuant to the PAIMI, DD and PAIR Acts.  EXHIBIT # 3.

On March 17, 2009, MPAS advocate again requested records regarding inmate #2, unidentified individual. This request was made pursuant to the PAIMI, DD and PAIR Acts. EXHIBIT # 4.

On April 7, 2009, the Sheriff's FOIA attorney sent a letter denying MPAS' request for records relating to the suicide of Inmate CC. The letter stated PADD and PAIR were not applicable and that PAIMI did not require the release because the family of Inmate CC was looking into the matter. The letter also indicated the previous bill covered only records for their policy manuals. EXHIBIT # 5.

On May 11, 2009, MPAS attorney sent letter to FOIA officer stating that interpretation of PAIMI was wrong, but at this time MPAS would try to cooperate by contacting the legal representatives of the inmates and reminding them that PAIMI Act required the Sheriff's Office to make a prompt disclosure of the legal representatives and their contact information so MPAS may contact them.  EXHIBIT # 6.

On June 3, 2009, MPAS attorney spoke by telephone with the FOIA coordinator. The FOIA coordinator could not release contact information without approval from corporate counsel and she did not know when or if approval would be granted.

On June 11, 2009, Sheriff's FOIA Attorney sent another letter, almost identical to the April 7, 2009 letter denying MPAS' request regarding the unidentified inmate.  The reasoning was the same as previous letter.   EXHIBIT # 7.

On or about June 24, 2009, the FOIA officer sent a letter to MPAS, which arrived on July 6, 2009, identifying two attorneys, Michael A. Rataj and Juan Rateo, which reportedly represent the estate of Inmate CC.   EXHIBIT # 8.  However, one of the alleged attorneys, Juan Rateo, is not listed as a member of the State Bar in Michigan.

Sheriff's Office did not send MPAS the name or contact information for the person who is the personal representative of inmate CC's estate.  According to newspaper reports, Inmate CC was a resident of Macomb Township in Macomb County Michigan. EXHIBIT # 1.  A probate estate should have been opened for him in Macomb County Probate Court, however, a recent search of Macomb County Probate Court records indicate there is no estate case opened in the name of inmate CC. EXHIBIT # 9.  A search of Wayne County Probate Court records produced the same result. EXHIBIT # 10. The death certificate for inmate CC indicates his county of residence as "Montmorecy [sic]" County, Michigan.  MPAS has contacted Montmorency County Probate Court and was told there is no probate estate case for anyone by the name of inmate CC.  It therefore appears there is no estate case open and no personal representative has been appointed to represent inmate CC's estate.

The Sheriff's Office has not provided any information regarding the inmate whose identity is unknown despite having previously claimed that this person's family had contacted the Sheriff's Office and that they had legal Counsel. EXHIBITS # 5 & 7.


<u>ISSUES</u>

A.  THE COURT MAY ISSUE A DECLARATORY JUDGMENT THAT A COUNTY SHERIFF'S OFFICE IS REQUIRED UNDER THE PROTECTION AND ADVOCACY STATUTES TO DISCLOSE TO THE STATE PROTECTION AND ADVOCACY SYSTEM ALL RECORDS RELATING TO TWO INMATES WHO COMMITTED SUICIDE WHILE IN THE COUNTY JAIL WHEN THERE IS NO KNOWN "LEGAL REPRESENTATIVE" FOR EITHER INDIVIDUAL.

## 1.    **Standard for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir.1995).    See also, 99 F.R.D. 465, 470 (1984).

The moving party must show there is an "absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 US. 317, 322-3; 106 S.Ct. 2548; 91 L.Ed.2d 265. (1986). The respondent must produce some evidence to raise a genuine issue to be submitted to the jury.  "The respondent must adduce more than a scintilla of evidence to over come the motion." *Street v. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), 1479 citing *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct 2505 (1986), 2512  106 S.Ct. 2505, 91 L.Ed.2d 202.

**2.**        **The Inmates Are Persons Eligible For Services Under The P&A Statutes**

MPAS has probable cause to believe both inmates are protected under one or more of the P&A statutes. This is because both individuals exhibited mental impairment so severe and to the extent that it resulted in them taking their own lives.  In one case, a District Court recognized that a person committing the act of suicide combined with the fact that prisons are known to house persons with mental illness was sufficient to establish probable cause that the individuals were eligible for services under the P&A System. *Protection & Advocacy For Persons With Disabilities v. Armstrong*, 226 F.Supp.2d 303, 314 (D.Conn. 2003). *relying in part on*, *Michigan Prot. & Advocacy Serv., Inc. v. Miller,* 849 F.Supp. 1202, 1207 (W.D.Mich.1994)

Therefore, if they had a specific mental health diagnosis by a mental health professional they would be covered by the PAIMI Act. 42 U.S.C. §10802(4); 45 C.F.R. §51.7. Additionally, if either individual's mental health impairment began before age 22

and it resulted in substantially limiting three or more major life activities they would be covered under DD Act. 42 U.S.C. §15102(8). If they had a mental health impairment that resulted in a substantial limitation of a major life activity and if they do not qualify for services under DD or PAIMI Acts then they are eligible for services under PAIR Act. 29 U.S.C. § 794e, 34 C.F.R. 381.5(b).[2]

Additionally, if the inmates are protected under the PAIR Act, PAIR mandates that persons falling under its protections shall have the same rights, be provided the same services and the P &A system will have the same <u>responsibilities and authority</u> to assist them, as those persons protected under the DD Act. 29 U.S.C. § 794e(f)(2).  Therefore, from this point forward I will discuss the DD and PAIMI Acts only.

### 3.      Jails are covered facilities under both the PAIMI and DD Acts

The P&A System was originally created with state mental hospitals in mind but facilities covered by the Acts are much broader.  The regulations under the PAIMI and DD Acts make it clear that jails are covered facilities under both Acts. 42 C.F.R. § 51.2, 45 C.F.R. 1386.19[3]

---

[2] The authority for PAIR is found in 29 U.S.C. 794e, which provides for the protection and advocacy for rights of individuals with disabilities not covered under the Client Assistance Program, the DD Act and the PAIMI Act.  The definition of "Disability" is found in 29 U.S.C. § 705 (9)(B) which states the definition used in Title 42 section 12102 will be used for disability under Subchapter V (which is the subchapter containing the PAIR Act.).  Title 42 section 12102 is 42 U.S.C. § 12102 and is the definition section of the Americans with Disabilities Act as Amended and contains the definition of disability.

[3] Facility includes any public or private residential setting that provides overnight care accompanied by treatment services. Facilities include, but are not limited to the following: general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units. 42 C.F.R. § 51.2 PAIMI Act Regulations.

Facility includes any setting that provides care, treatment, services and habilitation, even if only "as needed" or under a contractual arrangement. Facilities include, but are not limited to the following: Community living arrangements (e.g., group homes, board and care homes, individual residences and apartments), day programs, juvenile detention centers, hospitals, nursing homes, homeless shelters, jails and prisons. 45 C.F.R. 1386.19 DD Act Regulations.

**4.      MPAS received a complaint and has probable cause to believe the individuals may have been subjected to abuse and/or neglect.**

The newspaper articles and news reports can constitute a complaint both under the PAIMI Act, 42 C.F.R. §51.2, and the DD Act, 45 C.F.R. §1386.19. See also, *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 894 F.Supp. 424, 498 (M.D. Ala.1995). (The Court held that the term "complaint" should be construed very broadly to protect and ensure the rights of persons with disabilities, determining that an anonymous voice message was sufficient to be a complaint.)

Based on these complaints, newspaper articles, MPAS determined there was probable cause to open an investigation into the deaths of inmates #1 and #2.  EXHIBITS #1 & 2.

The purpose of MPAS investigation is to determine if either individual was the victim of abuse and/or neglect which cause or contributed to their deaths, to determine what if anything could have been done to prevent their deaths, and if appropriate, to make recommendations regarding policies and procedure to ensure it does not happen again. MPAS will in some cases make referrals to additional agencies that have jurisdiction and authority to monitor the facility in question and in some instances may pursue legal action on behalf of the person with disability or the estate of the person.

**5.      Under PAIMI, MPAS is entitled to access to all records concerning eligible persons when conducting an investigation into potential abuse or neglect and MPAS is not required to seek consent when there is no known legal representative to ask and the facility has failed to identify any such person when requested.**

MPAS's authority to access records under the PAIMI Act is contained in 42 U.S.C. § 10805(a)(4) (2009).  The relevant part of which states that a state's P& A System shall;

10

(4) . . . have access to all records of--
(A) any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
(B) any individual (including an individual who has died or whose whereabouts are unknown)--
(i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
(ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
(iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect;

This standard is repeated in the PAIMI regulations at 42 C.F.R. § 51.41(b).  There appears to be some disagreement as to the second condition on whether there is a "guardian, conservator, or other legal representative" to give consent and thus requiring MPAS to seek their consent.  Wayne County Corporate Counsel in their letters of April 7, and June 11, 2009, claim that they were contacted by legal representatives of the estates of the two inmates and MPAS was required under PAIMI to seek the personal representative's consent to the release of records. EXHIBITS # 5 & 7.[4]

---

[4] In their letter dated April 7, 2009, the Sheriff's Office relies on 42 U.S.C. § 10805(a)(4)(A) to claim MPAS must seek the authorization of the individual or their legal representatives. But parenthetical (A) only applies if the individual is alive. Parenthetical (B) applies when the person is dead or whereabouts is unknown.  This section only requires MPAS to seek authorization if the person has a legal representative. If there is no known legal representative and MPAS has received a complaint it is not required to seek an authorization. 42 U.S.C. §10805 (a)(4)(B)(ii) and (iii).

Additionally, the Defendant points to the unpublished decision in *Michigan Protection & Advocacy Service, Inc. v. Evans*, (Docket No. 06-13273). Attached as EXHIBIT # 11.   As the court will see, that decision is not factually on point with the current case. In that case, a personal representative had been appointed by probate court, the personal representative was the deceased's mother, the estate was taking legal action against the Sheriff to enforce rights of the estate, the Sheriff's Office provided MPAS with the contact information for the personal representative and MPAS did not seek her authorization.

In the current case, MPAS has agreed to contact the personal representative of the estate, the Sheriff's Office has not provided the names of the personal representative, a check of several county probate courts has not found any probate estate for inmate CC, one inmate is unknown, and no legal action has been taken by the estate of either inmate to MPAS' knowledge.  All of these facts were highly significant to the Court in ruling as it did.  Given the significant differences, the above cited case would not provide guidance for our current case.

MPAS responded on May 11, 2009, stating that while MPAS disagrees with their interpretation of the PAIMI Act, MPAS agreed to contact the personal representative of the estate of each inmate.  However, under the PAIMI regulations the Sheriff's Office was required to provide their names and contact information, pursuant to 42 C.F.R. §51.43.  EXHIBIT # 6.

On July 6, 2009, MPAS received a letter from Ms. Katherine Ben-Ami, Lead Attorney/FOIA Coordinator.  Her letter dated June 24, 2009, identifying two attorneys, Michael A. Rataj and Juan Rateo, which reportedly represent the estate of Inmate CC. However, one of the alleged attorneys Juan Rateo is not listed as a member of the State Bar in Michigan.  She did not provide the name or contact information for the person who is the personal representative of inmate CC's estate nor even confirm someone had in fact been appointed as personal representative.  She did not provide any information regarding the inmate whose identity is unknown despite having previously claimed that this person's family had contacted the Sheriff's Office and that they had legal Counsel. EXHIBIT # 7.

MPAS has made a good faith attempt to locate a personal representative of inmate CC by contacting the Macomb, Montmorency, and Wayne County Probate Courts to see if an estate has been opened.  Each Probate Court stated there was no case open under inmate CC's name.  MPAS has no information regarding the other inmate.

Even if this Court were to agree with the Defendant's interpretation of the statute, the Defendant has failed to provide any information to MPAS that would allow MPAS to request consent from the legal representatives.  Additionally, it's not clear that a probate estate has been opened for either of these individuals or that anyone has been appointed

as personal representatives of their estates. Finally, MPAS does not believe the personal representative of the estate qualifies as an "other legal representative" of the individual according to the PAIMI regulations. 42 C.F.R. § 51.2.

In the present case, we have two persons that appear to have been so severely distressed that they took their own lives, they are unable to give consent, there are no known legal representatives for either individual, and MPAS has received a complaint that provides probable cause to believe they may have been the victims of abuse or neglect. This case meets the conditions set forth under 42 U.S.C. § 10805(a)(4)(B), which requires the Defendant to release to MPAS all records in its possession that relate to these two individuals.

**6.     Under the DD and PAIR Acts MPAS is entitled to the records of an eligible person if the person dies and MPAS is not required to seek consent from anyone.**

MPAS is entitled to the records of both inmates under the PAIR and DD Acts as well. The DD Act, which also applies to a person eligible for protection under PAIR, 29 U.S.C. § 794e(f)(2) is clearer and more direct than PAIMI. Under the DD Act, if the individual has died, the P&A system is entitled to records of the individual and the P&A is not required to seek consent from anyone.

The relevant part of the DD Act (at 42 U.S.C. 15043(a)(2)(J)) provides that the P&A shall:

> (i) have access to the records of individuals described in subparagraphs (B) and (I) [42 U.S.C. 15043(a)(2)(B) and (I)], and other records that are relevant to conducting an investigation, under the circumstances described in those subparagraphs, not later than 3 business days after the system makes a written request for the records involved; and
> (ii) have immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party, in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability–

(I) if the system determines there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy; or

(II) in any case of death of an individual with a developmental disability.

Thus, as a result of the reauthorization of the DD Act in 2000, the statute expressly provides that no consent of a third party is required to access records in the case of any death of an individual with a developmental disability or where the P&A is investigating an immediate threat to health or safety. 42 U.S.C. 15043(a)(2)(J)(ii)(II).

This conclusion is supported by at least one case decision. In *Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs* (N.D. Iowa, June 14, 2002, unpublished) EXHIBIT # 12, the court issued a permanent injunction which essentially restates the requirements on access to records set forth in the DD Act of 2000 and applied these requirements to both persons with developmental disabilities and mental illness.

THE COURT SHOULD ISSUE A PERMANENT INJUNCTION REQUIRING THE DEFENDANT TO DISCLOSE RECORDS TO THE STATE'S PROTECTION AND ADVOCACY SYSTEM WHEN THE PLAINTIFF WILL SUFFER IRREPARABLE HARM IF ITS FEDERAL MANDATES ARE INTERFERED WITH, THERE IS NO HARM TO THE DEFENDANT, AND IT IS IN PUBLIC'S INTEREST.

1.     **Standard for Issuing a Permanent Injunction**

Pursuant to Fed.R.Civ. P. 65(d), a plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and that it is in the public's interest to issue the injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir.Mich.2006) citing, *eBay Inc., et al. v. MercExchange, LLC*, 547 U.S. 388, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006). Additionally, the movant must actually succeed on the merits of its claim and cannot rest,

as it may when seeking a preliminary injunction, on a mere showing of a likelihood of success.

## 2.   Balancing the Burdens on Each Party and Considering the Public Interest would favor the Court Granting Plaintiff's Request

The preceding section discussed the merits of MPAS claims and request for declaratory judgment and for brevity's sake will not be repeated.  The relative burdens on the Plaintiff and Defendant as well as the public interest favor the court granting plaintiff's request for permanent injunction.

The burden on MPAS if it is not given access to the records is very substantial. MPAS cannot fulfill its mandate under federal and state law.  MPAS cannot determine if there was abuse and/or neglect without reviewing the records.  MPAS cannot continue with its investigation or make recommendations for changes in policy or procedure to prevent abuse and neglect in the future without the records. Failure of MPAS to fulfill its mandated role places it in jeopardy of losing its designation as the state's P&A system. Even more importantly, persons with disabilities, the persons whose interests and rights MPAS seeks to protect, will be placed in greater jeopardy of being subjected to abuse and/or neglect.

One Circuit and several District Courts have ruled that denial of records causes "irreparable harm" to the P&A system justifying either preliminary or permanent injunctive relief.[5]

---

[5] • *Connecticut Office of Protection and Advocacy v. Hartford Bd. of Ed.*, 355 F. Supp. 2d 649, 653 *aff'd on other grounds*, 464 F.3d 229 (2nd Cir. 2006) (agreed with court holding that a "protection and advocacy system's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm").
• *Ohio Legal Rights Service v. Buckeye Ranch, Inc.,* 365 F.Supp.2d 877 (S.D.Ohio, 2005, (citing *Hartford* district court decision above).
• *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039 (E.D. Wi. 2001) (DD and PAIMI action against a nursing home seeking release of records of residents who died as a result of

Inmates committing suicide in the County Jails of Michigan is a significant and important problem this state faces.  Since September 2007 to the present, MPAS has investigated the suicides and deaths of eleven persons with disabilities in county jails in Michigan, from Marquette County to Wayne County.  In addition, MPAS recently FOIA twenty-one county sheriff offices, geographically distributed across the state, requesting a list of all deaths that have occurred in their jails in the last five years.  Of the sixteen offices that have answered, they reported ten suicides.  (We are still waiting for Wayne's answer). Additionally, there are numerous individuals that try to commit suicide that we don't know about. These facts underscore the important public-interest-role MPAS plays by investigating and reviewing what happened in these deaths and trying to reduce or eliminate similar deaths in the future.  MPAS is trying to save people's lives.

Given the substantial burden MPAS faces if the permanent injunction is not granted and the public interest in ensuring that persons with disabilities are

---

choking on food; preliminary injunction issued requiring the release to the P&A of each and every report, document and other record relating to the deceased patients, including those related to their deaths and any investigation thereof).
• *Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F.Supp.2d 1150 (June 25, 2001 N.D. Iowa) (investigation of a children's residential psychiatric facility that had engaged in abusive restraint and seclusion practices; court concluded that the P&A had properly found a potential for an immediate threat to the health and safety of all of the residents).
• *Wisconsin Coalition for Advocacy, Inc. v. Busby*, No. 02-C-871 (E.D. Wi Sept. 24, 2003) (granting a permanent injunction, court ordered a county coroner to disclose to the P&A its report on the investigation of the death of an inmate with mental illness, finding that access to coroners' reports is authorized under the PAIMI Act and that such reports must be produced promptly and may not be withheld pending completion of related criminal investigations).
• *Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. 630, 2001 WL 1809404 (S.D. Iowa 2002) (permanent injunction barring state certification agency from denying P&A access to its investigative findings regarding a restraint-related death of a DD facility resident; in granting the injunction, the court gave great weight to the P&A's argument that denial of access to these reports would cause it irreparable harm – i.e., replicating these reports through the P&A's own investigation would be time consuming and costly, and in the case of the committee minutes which had been sought, replication is impossible).
• *Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303 (D. Conn. 2003) (permanent injunction against corrections department, upholding P&A's right under the PAIMI Act to access records relating to the suicides of inmates).

free from abuse and/or neglect the facts favor the Court granting Plaintiff's request.


THE DEFENDANT SHOULD BE ORDERED, PURSUANT TO 42 U.S.C. §1983, TO PAY PLAINTIFFS REASONABLE COSTS AND ATTORNEY FEES WHEN THE DEFENDANT, ACTING UNDER COLOR OF LAW, HAS DENIED AND FRUSTRATED PLAINTIFF IN EXERCISING ITS RIGHTS UNDER FEDERAL LAW

A P&A system may bring an access authority action against state officials under § 1983 in order to get attorney fees awarded as the prevailing party. 42 U.S.C. § 1983 provides relief against state officials who derive persons of any rights, privileges, or immunities under the Constitution or federal statutes.[6]  If a party prevails in a Section 1983 action, the court in its discretion, may allow such party a reasonable attorney's fee as part of the costs. 42 U.S.C.  § 1988(b).

The U.S. Supreme Court most recently set the standards for a § 1983 action in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), which involved whether there was a private right of action for a school's violation of FERPA, 20 U.S.C. § 1232g. The Court held that if Congress wished to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms. *Id.* at 290. The Court concluded that FERPA does not create any enforceable rights under § 1983 because FERPA's nondisclosure provisions contained no rights-creating language; have an aggregate, not individual, focus; and serve primarily to direct the Secretary of Education's distribution of public funds to educational

---

[6] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. 42 U.S.C. § 1983

institutions. *Id.* Although there have been no published decisions regarding P&A access authority under § 1983 since the *Gonzaga* decision in 2002, the court should find that MPAS is entitled to its attorneys' fees because Congress clearly and unambiguously gave P&As the right to pursue legal remedies to ensure the protection of individuals with disabilities. 42 U.S.C. § 10805(a)(1)(B); 42 U.S.C. § 10543(a)(2)(A).

In *Advocacy Center v. Stalder*, 128 F. Supp. 2d 358 (M.D. La. 1999), the Louisiana P&A successfully brought a § 1983 action for declaratory and injunctive relief on the grounds that state prison officials had violated both the First Amendment and the PAIMI Act when they conditioned P&A access to inmates' mental health records on the court first conducting an in *camera* review of records. The court held that the officials had deprived the P&A of its First Amendment right to communicate and consult with the individuals with mental illness it served. The court also held that the officials had violated § 1983 by depriving the P&A of its right to access records under the PAIMI Act, which expressly gave P&As the right to pursue legal remedies.

Additionally, plaintiff requests costs and attorney fees pursuant to Fed.R.Civ.P. 54. In support of its request, an affidavit, receipts, and time record are attached. Exhibit 13. MPAS reserves the right to seek costs and attorney fees from the present to the conclusion of this matter. If MPAS is the prevailing party, it will submit additional documentation.

<u>CONCLUSION</u>

For the reasons stated above, MPAS respectfully requests this Honorable Court to grant it summary judgment, and a permanent injunction requiring the Sheriff's Office to provide all records in their possession concerning inmates CC and the unidentified

individual, and in the future to comply with the P&A Acts.  Additionally, MPAS requests

its costs and attorney fees for violation of its rights under § 1983 and pursuant to 42

U.S.C. § 1988.


                              Respectfully submitted,

Dated: September 3, 2009        s/Chris E. Davis
                                MICHIGAN PROTECTION &
                                ADVOCACY SERVICE, INC.
                                Attorney for Plaintiff
                                29200 Vassar Blvd., Suite 200
                                Livonia, MI  48152
                                (248) 473-2990
                                cdavis@mpas.org
                                P52159

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 3, 2009, I electronically filed the foregoing Plaintiff's Motion for and Brief in Support of Substitution of Defendant, Summary Judgment, Permanent Injunction, and Costs/Attorney Fees with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  James M. Surowiec.

<u>s/Chris E. Davis</u>
MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.
29200 Vassar Blvd., Suite 200
Livonia, MI  48152
248-473-2990
cdavis@mpas.org
P52159