UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**MICHIGAN PROTECTION &**
**ADVOCACY SERVICE, INC.**

        **Plaintiff,**

v.                                         Case No. 09-12224
                                         HONORABLE DENISE PAGE HOOD

**WARREN C. EVANS, In his Official**
**Capacity as Sheriff of Wayne County,**

        **Defendant.**
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUBSTITUTION OF DEFENDANT,
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S MOTION FOR
PERMANENT INJUNCTION, AND DENYING IN PART AND GRANTING IN PART
PLAINTIFF'S MOTION FOR COSTS/ ATTORNEY FEES**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff Michigan Protection & Advocacy Service, Inc.'s ("MPAS") Motion for Substitution of Defendant, Summary Judgment, Permanent Injunction, and Costs/Attorney Fees **[Docket No. 15, filed on September 3, 2009]**. Defendant Warren C. Evans responded on September 15, 2009 **[filed on October 15, 2009]**, to which Plaintiff replied **[Docket No. 21, filed on October 19, 2009]**. Defendant filed a Response in Opposition to an Award of Prevailing Party Costs Pursuant to 42 U.S.C. 1988(B) & Fed. R. Civ. P. 54 **[Docket No. 33, filed on June 29, 2010]**. Plaintiff filed a Reply in Support of Its Motion for Attorney Fees **[Docket No. 34, filed on July 7, 2010]**.

**II.    STATEMENT OF FACTS**

Plaintiff is a non-Profit Michigan corporation, designated by the Governor of Michigan

as the state's protection and advocacy (P&A) system with the responsibility to enforce and carry out federal mandates under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (PAIMI); the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (DD); and the Protection and Advocacy of Individual Rights (PAIR) Program of the Rehabilitation Act of 1973, as amended.

According to Plaintiff, on or around January 16, 2009, Plaintiff learned of the suicides of two inmates at the Wayne County Jail. Inmate #1 was found dead in his cell on January 15, 2009. Inmate #2 was found dead in his cell on January 14, 2009. Plaintiff contends that county jails are required to have policies and procedures in place to screen inmates for suicidal tendencies and to prevent suicides, so the suicides of these inmates indicate they had mental health issues that were not being addressed, and were possibly victims of abuse and/or neglect. Based on information in reports it received, MPAS determined it had probable cause to open an investigation into the suicidal deaths of these two inmates.

Defendant maintains that all inmates booked in the Wayne County Jail receive suicide risk assessment. According to Wayne County staff psychologist Dr. John Restum, neither inmate evidenced the requisite criteria to be diagnosed with a developmental disability.

Plaintiff sent a request for records to Defendant on or around January 28, 2009, requesting all documents regarding these two inmates, pursuant to PAIMI, DD, and PAIR.[1] On March 17, 2009, Plaintiff made another request. On April 7, 2009, Defendant's Freedom of

---

[1] Plaintiff does not contend that DD applies to these inmates, but only that if the inmates are protected under PAIR, they have the same rights, shall receive the same services, and the P&A will have the same responsibilities and authority to assist them, as those individuals protected under DD. *See* 29 U.S.C. § 794e(f)(2).

Information Act ("FOIA") officer denied the request for records relating to Inmate #1, because DD and PAIR were not applicable, and PAIMI did not require the release because Inmate #1's family was already investigating the matter. On May 11, 2009, Plaintiff responded stating that, although it disagreed with Defendant's interpretation of PAIMI, Plaintiff would try to contact both inmates' legal representatives. Plaintiff also stated PAIMI required Defendant to promptly disclose the inmates' legal representatives and provide their contact information. On June 11, 2009, Defendant's FOIA officer denied Plaintiff's request with respect to Inmate #2.

Defendant's FOIA officer sent a letter to Plaintiff, received in early July, which identified two attorneys, Michael A. Rataj and Juan Mateo, who were reported to represent Inmate #1's estate. Since that time, Plaintiff has received a letter from attorneys Rataj and Mateo stating they "no longer represent the Estate of Inmate #1, nor do [they] know who is the personal representative of his estate." October 20, 2009 Letter to MPAS [Docket No. 22, filed on October 21, 2009]. It appears that there is no estate case open and no personal representative has been appointed to represent Inmate #1's estate.

Defendant maintains that although Plaintiff has requested all medical and psychiatric records from Defendant, Defendant does not control medical or psychiatric records. Instead, the records are controlled by Jail Health Services. Defendant also contends that Plaintiff failed to exhaust administrative remedies by appealing the FOIA denials to Wayne County's FOIA Appellate Officer before filing this action.

The parties now agree that Inmate #2 has a personal representative, Jacob Salazar, and Plaintiff no longer seeks a court order to receive documentation relative to Inmate #2. The following analysis is therefore limited to Inmate #1.

3

## III. LAW & ANALYSIS

### A. SUBSTITUTION OF DEFENDANT

Neither party disputes that Warren Evans is no longer the Wayne County Sheriff, and this action was brought against him in his official capacity. Benny Napolean was named Sheriff on July 24, 2009. Pursuant to Fed. R. Civ. P. 25(d), Plaintiff's motion to substitute counsel is granted.

### B. SUMMARY JUDGMENT

#### 1. Standard of Review

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be clear from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

#### 2. Analysis

##### a. Failure to Exhaust Administrative Remedies

Defendant does not dispute that PAIMI authorizes Plaintiff to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805(a)(1)(A). Defendant challenges Plaintiff's ability to bring a claim in front of this Court, alleging that Plaintiff has failed to exhaust all administrative remedies pursuant to 42 U.S.C. § 10807.

Defendant acknowledges that courts have "substantial discretion regarding exhaustion by eligible systems." *Gonzalez v. Martinez*, 756 F.Supp. 1533, 1599 (S.D.Fla 1991). "The legislature obviously intended that advocacy systems retain some flexibility in determining which informal-or inadequate-administrative remedies to pursue," and whether an agency has "exhausted all appropriate administrative remedies can only be determined on a case by case basis." *Id*. Plaintiff produces

This Court finds that MPAS has not failed to exhaust available administrative remedies, and may proceed with this action. Defendant argues that the agency failed to pursue administrative remedies by filing an appeal to the Wayne County FOIA appellate officer. The Court agrees with Plaintiff that the FOIA appeal process is not applicable, as the records of the inmates were requested under the protection and advocacy laws, not the FOIA. No FOIA request was made, so analysis under FOIA is not appropriate.

### b. Defendant's Access to Records

Defendant further argues that Plaintiff's request for "[a]ll documentation (including any incident reports, case notes, witness statements, mental health records, etc.) . . ." should not have been made to Defendant, but rather Jail Health Services, a separate entity under the executive

branch of Wayne County. Defendant does not explain how Jail House Services is connected to the jail. There is no information provided regarding to whom they report, the identity of the directors, and what authority they have.

Pursuant to M.C.L. 51.75, Defendant has "charge and custody of the jails of his county, and of the prisoners in the same; and shall keep them himself, or by his deputy or jailer." Defendant has not presented any evidence to show that he is not required to keep, or have custody or control over, the medical records of inmates in his custody.

### c. Developmental Disability

Defendant argues that Plaintiff sues Defendant under the PAIR and DD Acts, and that each of these require the protected individual to have a developmental disability. Defendants submit the affidavit of a Wayne County clinical psychologist, stating "[t]he allegations by MPAS are unfounded. Neither inmate evidenced any diagnostic criteria to meet the developmental disability diagnosis." Affidavit of Dr. John Restum, ¶ 3. Plaintiff argues that it also brings this motion under PAIR and PAIMI, and that the affidavit is not relevant to the instant motion.

PAIR does not require that an individual be developmentally disabled. Instead, it protects "the legal and human rights of individuals with disabilities who . . . are ineligible for protection and advocacy programs under [DD] because the individuals *do not have a disability*" and "are ineligible for services under [PAIMI] because the individuals are not such individuals with mental illness." 29 U.S.C. § 794e(1).

### d. Inmate #1's Eligibility for P&A Services

If Inmate #1 had a specific mental health diagnosis by a mental health profession, he would be eligible for P&A services under PAIMI. 42 U.S.C. § 10802(4). If his mental health

6

impairment began before age twenty-two and resulted in the substantial limitation of three or more major life activities, he would be covered under PAIMI. 42 U.S.C. § 15102(8). If he had a mental health impairment that resulted in the substantial limitation of a major life activity and did not qualify for services under PAIMI or DD, he would be eligible for services under the PAIR. 29 U.S.C. § 794e.

Plaintiff argues that it has probable cause to believe Inmate #1 is protected under one or more of the P&A statutes, because he exhibited a mental health impairment so severe that it resulted in him taking his own life. "As a number of courts that have considered this issue have concluded, evidence that a facility has previously housed individuals who are mentally ill, as well as evidence that some current residents may be mentally ill is sufficient under PAMII [sic] with access by [P & As]." *Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303, 314 (D.Conn. 2003) (internal quotations omitted). There is no genuine issue of material of fact as to whether Wayne County Jail is a facility that has previously housed or currently houses individuals who are mentally ill. *See id.* Furthermore, the fact that Inmate #1 "committed suicide certainly suggests that [h]e suffered from some sort of mental illness or condition." *Id.* There is no genuine issue of material fact that Inmate #1 committed suicide. Under either of these criteria, Plaintiff has established probable cause to believe Inmate #1 is protected under one or more P&A statutes, such that it is entitled to judgment as a matter of law.

e.  **Plaintiff's Access to Records**

Having already concluded that Inmate #1 is protected under one or more of the P&A statutes, Plaintiff is also entitled to access all records concerning Inmate #1 for the purpose of conducting an investigation into abuse and neglect. Pursuant to PAIMI, Plaintiff is entitled to

7

documents under 42 U.S.C. § 10805(a)(4)(B)(ii), which provides "access to all records of any individual (including an individual who has died or whose whereabouts are unknown who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State." Under DD, which also applies to one eligible for PAIR, provides "access to the records of individuals . . . and other records that are relevant to conducting an investigation . . . in any case of death of an individual with a developmental disability." 42 U.S.C. § 15043(a)(2)(J)(i)(II). As discussed above, there is no genuine issue of material fact about Plaintiff's entitlement to these records with respect to Inmate #1. Plaintiff's motion for summary judgment requesting a declaratory judgment is granted.

### C. PERMANENT INJUNCTION

#### 1. Standard of Review

In the Sixth Circuit, "[a] plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and that it is in the public's interest to issue the injunction." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Plaintiff's motion does not appear to limit the records requested to Inmate #1. However, Plaintiff's Complaint clearly seeks permanent injunctive relief "requiring Defendant to provide MPAS all reports, documents, and records relating to Inmate #1. . ." Complaint ¶ B. Having already established that Plaintiff is entitled to access to Inmate #1's records, the Court's balancing of the four factors listed above indicate a permanent injunction is warranted in this case with respect to Inmate #1.

#### 2. Analysis

First, Plaintiff cites a host of cases supporting the principle that Plaintiff suffers irreparable harm when it is unable to fulfill its mandate under federal law, cannot determine if there was abuse or neglect, and cannot make recommendations for changes in policy and procedure to prevent such abuse and neglect in the future. *See, e.g., Connecticut Office of Protection and Advocacy v. Hartford Board of Education*, 355 F.Supp.2d 649, 653 (D. Conn. 2005); *Ohio Legal Rights Service v. Buckeye Ranch, Inc.*, 365 F.Supp.2d 877 (S.D. Ohio 2005); *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d 1039 (E.D. Wi. 2001); *Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303 (D. Conn. 2003). Without access to the necessary records, Plaintiff suffers irreparable harm. Given the nature of the case, there is unquestionably no adequate remedy at law and a remedy in equity is warranted. As stated by Plaintiff, inmate suicide is a significant and important problem. It is in the public's interest to have agencies such as Plaintiff able to access the necessary records to ensure individuals with disabilities are not suffering from abuse or neglect. Providing access to the records of Inmate #1 will allow Plaintiff to do a thorough investigation in furtherance of this goal.

### D. COSTS/ATTORNEY FEES

Plaintiff requests reasonable attorney fees and costs associated with both Inmate #1 and Inmate #2, under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54. Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Under Fed. R. Civ. P. 54, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs– other than attorneys fees– should be allowed to the prevailing party."

In this case, there is no federal statute, rule, or court order that would prevent the prevailing party from receiving costs. The Supreme Court has defined the term "prevailing party." The Supreme Court explains:

> In designating those parties eligible for an award of litigation costs, Congress employed the term "prevailing party," a legal term of art. Black's Law Dictionary 1145 (7th ed.1999) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>.-Also termed *successful party*." This view that a "prevailing party" is one who has been awarded some relief by the court can be distilled from our prior cases.

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 603 (2001).

In this case, Plaintiff is a prevailing party with respect to Inmate #1. Plaintiff has succeeded on a motion for summary judgment, and been awarded relief in the form of an injunction by the court. With respect to Inmate #2, Plaintiff cannot be considered a prevailing party. This Court has awarded no relief to Plaintiff regarding Inmate #2. Inmate #2's personal representatives have brought an action on his own behalf, and Plaintiff dropped all claims with respect to Inmate #2. In its discretion, this Court awards reasonable costs and attorney fees with respect to Inmate #1 *only*. Plaintiff must produce documentation of costs and attorney fees, limited to those associated with Inmate #1, for a determination of the amount to be awarded.

IV.  **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff Michigan Protection & Advocacy Service, Inc.'s Motion for Substitution of Defendant **[Docket No. 15, filed on September 3, 2009]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment **[Docket No. 15, filed on September 3, 2009]** is **GRANTED** as to Inmate #1, and **MOOT** as to Inmate #2.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Permanent Injunction **[Docket No. 15, filed on September 3, 2009]** is **GRANTED** with respect to the records of Inmate #1.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Costs/Attorney Fees **[Docket No. 15, filed on September 3, 2009]** is **DENIED IN PART** (with respect to costs and attorney fees associate with Inmate #2) and **GRANTED IN PART** (with respect to costs and attorney fees associated with Inmate #1).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Declaratory Judgment **[Docket No. 15, filed on September 3, 2009]** is **GRANTED**. Defendant is required to disclose to Plaintiff all records relating to Inmate #1.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 30, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager