UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKAH FIALKA-FELDMAN,

       Plaintiff,

v.

       Case No. 08-14922
       Honorable Patrick J. Duggan

OAKLAND UNIVERSITY BOARD
OF TRUSTEES, GARY D. RUSSI,
MARY BETH SNYDER, and LIONEL
MATEN,

       Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR REASONABLE ATTORNEYS' FEES

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 23, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

Presently before the Court is Plaintiff's motion for reasonable attorneys' fees filed on January 20, 2010, pursuant to the attorney fee provisions in the Rehabilitation Act, 29 U.S.C. § 794a(2)(b), and The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The motion has been fully briefed. On March 12, 2010, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to the motion. For the reasons that follow, the Court grants Plaintiff's motion.

## Procedural Background

Plaintiff initiated this lawsuit against Defendant Oakland University Board of Trustees on November 25, 2008, claiming that Defendant's denial of his request for housing in one of Oakland University's on-campus dormitory living spaces violates the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(B), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Plaintiff thereafter filed a motion for preliminary injunction based on his claims under the FHA. At the hearing with respect to his motion, Plaintiff asked the Court to also consider his Rehabilitation Act claims in deciding whether to grant his request for a preliminary injunction.

On February 5, 2009, this Court denied Plaintiff's motion concluding that the Board of Trustees is entitled to Eleventh Amendment Immunity and that Plaintiff in any event was not likely to succeed on the merits of his FHA claims. The Court indicated in a footnote that, even if it considered Plaintiff's Rehabilitation Act claims in deciding the motion and concluded that Eleventh Amendment Immunity did not bar those claims, it would reach the same result because its analysis of the merits of his FHA and Rehabilitation Act claims would be the same. (Doc. 12 at 11 n.2.)

Plaintiff thereafter amended his complaint, with the Court's permission, to add University officials Gary D. Russi, Mary Beth Snyder, and Lionel Maten as defendants and to assert the following claims:

> (I) disparate impact discrimination in violation of the FHA;
>
> (II) disparate treatment discrimination in violation of the

2

FHA;

(III) disparate treatment discrimination in violation of the Rehabilitation Act;

(IV) denial of a reasonable accommodation in violation of the Rehabilitation Act;

(V) disparate treatment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; and,

(VI) disparate impact discrimination in violation of the Rehabilitation Act.

The parties subsequently filed cross-motions for summary judgment.

At a hearing with respect to the summary judgment motions, Plaintiff's counsel informed the Court that Plaintiff was abandoning his disparate impact discrimination claims brought under the FHA and Rehabilitation Act. On December 23, 2009, this Court issued an opinion and order with respect to Plaintiff's remaining claims. The Court concluded that Plaintiff's request for an accommodation of the University's housing policy was reasonable and that Defendants violated § 504 of the Rehabilitation Act by refusing to provide Plaintiff with this reasonable accommodation. The Court noted that while it had previously found in its opinion and order denying Plaintiff's motion for a preliminary injunction that Plaintiff was not likely to succeed on this claim, in reaching that conclusion it failed to consider the Supreme Court's decision in *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516 (2002), thus resulting in a flawed analysis. (Doc. 53 at 13 n.2.) The Court held, however, that Plaintiff failed to demonstrate a prima facie

3

case of disability discrimination to support his remaining claims. The Court issued a permanent injunction, requiring Defendants to provide on-campus housing for Plaintiff during his remaining semester at the University. A judgment was entered in favor of Plaintiff and against Defendants on January 7, 2010.

## Parties' Arguments

### Motion

In his initial motion, Plaintiff seeks attorneys' fees in the amount of $176,841.43. This amount reflects hours billed by the following attorneys from the Michigan Protection and Advocacy Services, Inc. ("MPAS"), which represented Plaintiff in this matter: lead counsel Chris Davis, MPAS Legal Director Mark Cody, and staff attorneys Veena Rao, Joshua Kay, and Gabrielle Frampton. Ms. Frampton left MPAS while this matter was pending. Plaintiff has submitted affidavits from these attorneys detailing their education and legal experience and a "Time/Billable Hours Data Report" setting forth the tasks performed and hours spent by the attorneys on this matter. Plaintiff's attorneys are seeking the following hourly rates for the work performed in this case: $250 for Ms. Rao, Ms. Frampton, and Mr. Davis; $300 for Mr. Cody; and $150 for Mr. Kay.

### Response

In their response to Plaintiff's motion, filed on February 3, 2010, Defendants raise several objections to Plaintiff's requested attorneys' fees. First, Defendants maintain that the billing rates of Plaintiff's attorneys are unreasonably high. Based on the State Bar of Michigan: *2007 Economics of Law Practice in Michigan Survey* (Resp. Ex. 2),

Defendants contend that the hourly rates of Plaintiff's counsel should be no more than the $200 for Mr. Cody, Mr. Davis, and Ms. Rao and $150 for Ms. Frampton. Next, Defendants contend that Plaintiff's request for fees is not supported by appropriate billing records. Specifically, Defendants point out that nearly a half of the time records submitted by Plaintiff's counsel lack specific descriptions as to the task performed and that where descriptions are provided, they are too vague or incomplete to assess the reasonableness of the work performed and/or time spent on the task.

Even if the Court concludes that the time records submitted by Plaintiff's counsel are not vague or incomplete, Defendants raise several alternative arguments for why the Court should conclude that the fees set forth in those records are unreasonable. These arguments, as they relate to all of Plaintiff's attorneys are:

    A.    Excessive time on internal conferences is not reasonable;

    B.    Plaintiff is not entitled to fees for time spent at depositions by lawyers other than the essential participating lawyer;

    C.    Plaintiff is not entitled to the full amount of fees associated with travel time and should be awarded only a half of the total fees claimed for travel by Mr. Davis and no fees associated with Ms. Frampton as the billing records fail to support a justification for the travel time she billed;

    D.    Plaintiff is not entitled to fees for pre-litigation activities;

    E.    Plaintiff is not entitled to fees associated with his preliminary injunction motion because he did not

            prevail with respect to the motion; and

    F.      Any fee award should be reduced to reflect Plaintiff's limited success on his claims.

Defendants raise arguments specific to each attorney representing Plaintiff, as well.

With respect to Mr. Davis, Defendants contend that he spent hours performing tasks that should have been performed by attorneys billing at a lower hourly rate (e.g., performing Westlaw and Lexis research) or non-legal staff (e.g., filing and faxing) or that are not recoverable (e.g. attending Oakland University's Board of Trustee meetings). With respect to Mr. Cody, Defendants contend that his fees are unreasonable because Mr. Davis– who was lead counsel on the case– was (according to the statements in Mr. Davis' affidavit) more than qualified to take the lead in the case and did not require Mr. Cody's "supervision." As to Ms. Rao, Defendants object to $83.33 she billed for time spent associated with public and media relations and $208.34 she billed for tasks associated with replacing Ms. Frampton. Finally, as to Mr. Kay, Defendants contend that the services he performed were duplicative of those performed by other attorneys.

## Reply

In reply, Plaintiff has submitted revised billing records from his attorneys and asks the Court to base its decision regarding his motion for attorneys' fees on those records. In these revised records (Reply Ex. A), Plaintiff's attorneys have added entries derived from case notes in MPAS' client file to describe specifically the task performed and the aspect of the litigation to which it related. Additionally, Plaintiff's attorneys have removed from

6

their revised billing records the following:

- any fees related to Ms. Frampton and Mr. Kay;

- most fees related to Mr. Davis performing such tasks as faxing, filing, and records organizing that do not relate to discovery;[1]

- the majority of case conference items except those that Plaintiff's counsel claims were necessary to review discovery strategy and to discuss pleadings to be filed;

- any hours expended before the complaint was filed that do not relate to researching and drafting requests for a reasonable accommodation;

- any hours related to publicity; and

- hours related to Mr. Cody's supervision and feedback.

Plaintiff's counsel further reduced by 50% the hours billed for a second attorney to attend depositions and reduced the hourly rate for travel to $125 (50% of Mr. Davis' and Ms. Rao's hourly billing rate and 40% of Mr. Cody's rate). As a result of these adjustments to the billing records, Plaintiff now seeks an award of attorneys' fees of $134,234.45 (as opposed to the previous $176,841.43).

Plaintiff continues to maintain that the hourly rates charged by his attorneys are reasonable in light of prevailing market rates and the various factors that courts consider

---

[1] In this category, there are four entries totaling 2.7 hours that still do not detail the task(s) performed (9/16/09; 10/27/09; 12/18/09; 12/21/09) and one entry for 3 hours where the specific task is described as "gathering list e-mails" (9/11/09). The Court cannot determine from these entries whether the time and/or task was reasonable and therefore, as set forth *infra*, is deducting these hours from the attorneys' fees awarded.

7

to determine their reasonableness. *See infra* at 9 n.2. He further argues that his lack of success with respect to his discrimination claims does not warrant a reduction in the requested fees because those claims and his reasonable accommodation claim under the Rehabilitation Act (on which he was successful) arise from a "common nucleus of operative fact" and assert indistinguishable legal theories. A full recovery also is warranted, Plaintiff argues, because he obtained excellent results.

### Sur-Reply

Defendants argue that the revised billing records attached to Plaintiff's reply brief do not constitute "contemporaneous" time records and, as such, should not be considered to determine whether his attorneys' fees are reasonable. Defendants contend that these records were prepared after-the fact, solely in response to the arguments asserted in their response brief, and therefore are not reliable. According to Defendants, "[i]t would be practically impossible for Plaintiff's counsel to recreate accurate detailed time records spanning a fourteen-month period." (Sur-reply at 3.)

### Applicable Law and Analysis

42 U.S.C. § 1988 and 29 U.S.C. § 794a(2)(b) grant courts the discretion to award reasonable attorney's fees to a "prevailing party." There can be no dispute in this case that Plaintiff prevailed in this lawsuit and therefore the Court will not discuss this issue further. The question is the reasonableness of the attorneys' fees that Plaintiff seeks.

The starting point for calculating a reasonable attorneys' fees award "should be the determination of the fee applicant's "lodestar," which is the proven number of hours

8

reasonably expended on the case by an attorney, multiplied by his [or her] court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939. The Supreme Court has instructed district courts to exclude fees that were not "reasonably expended," such as fees due to overstaffing or redundancy of work. *Id.* at 434, 103 S. Ct. at 1939.

Once the district court determines the fee applicant's lodestar, the court must consider other factors relevant to the reasonableness of any fee award.[2] One important factor is the "results obtained." *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1940. As the

---

[2] The factors identified by the Supreme Court are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3, 103 S. Ct. at 1937 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Supreme Court has explained, there are two situations where the results obtained may affect the fee award:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Id.* at 434-35, 103 S. Ct. at 1940. The *Hensley* Court expressed doubt as to whether such claims will arise with frequency; rather, the Court explained, most civil rights cases will present only a single claim or multiple claims involving a common core of facts or based on related legal theories. In this second situation:

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 435, 103 S. Ct. at 1940. The Court explained that in this situation, if the plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee. *Id.* "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103 S. Ct at 1941. As the *Hensley*

10

Court instructed, it is within the district court's discretion to attempt to identify specific hours that should be eliminated or to simply reduce the award to account for the limited success. *Id.* at 436-37, 103 S. Ct. at 1941.

Turning first to the hourly rates charged by Plaintiff's counsel, this Court agrees with Defendants that those rates are too high. According to the State Bar of Michigan 2007 survey, the top median hourly litigation rate is $200 and the top median hourly litigation rate for firms the size of MPAS is $195. (Resp. Ex. 2 at 18, 21.) For attorneys in practice between 15 and 19 years, such as Mr. Davis and Ms. Rao, the median litigation hourly rate is $200. (*Id.* at 20.) The same median rate is found for attorneys in practice for 30 to 39 years, such as Mr. Cody. (*Id.*) Therefore, the Court concludes that a reasonable hourly rate for each of Plaintiff's attorneys is $200.

With respect to Defendants' complaint regarding the absence of case-specific descriptions or vague or incomplete descriptions in the billing records initially submitted by Plaintiff's counsel, this Court finds that the revised billing records attached to Plaintiff's reply brief resolve this issue for almost all of the billing entries. As Mr. Davis explains in an affidavit filed on February 23, 2010, case notes in MPAS' case management system were used to prepare the revised billing records and these notes were recorded contemporaneously with the work performed on the case. (Doc. 65.) The only action that was performed "after-the-fact" was incorporating the information in the case notes into the Time/Billable Hours Data Report. Plaintiff's petition for attorneys' fees therefore is supported by contemporaneous time records. *Compare Calhoun v. Acme*

11

*Cleveland Corp.*, 801 F.2d 558 (1st Cir. 1986) (finding attorney submissions insufficient where they listed the different tasks each attorney performed, the total number of hours, and hourly billing rate but did not give the dates when the tasks were performed or the amount of time spent on each task).

There are a handful of time entries related to Mr. Davis in the revised billing records still lacking in details sufficient for the Court to assess whether the work performed and/or hours expended are reasonable. These include 5.7 hours related to "faxing, filing, and record organizing" (as mentioned *supra* at n.1) and 8.1 hours for "research, reading, review and/or compiling information" (1.3 hours on 2/27/09; 1.5 hours on 8/7/09; 1.5 and 1.8 hours on 10/9/09; and 2 hours on 10/31/09). The Court therefore will reduce Mr. Davis' hours by 13.8 hours.

With the submission of the revised billing records, Plaintiff also has addressed most of Defendants' objections to the fees billed. Plaintiff's counsel removed the majority of their time related to attorney conferences and any hours preceding the filing of the complaint to the extent the time did not relate to researching and drafting requests for reasonable accommodations for Plaintiff. In their sur-reply, Defendants do not contest the reasonableness of the remaining time in these categories. Plaintiff's counsel also removed all of the hours billed by Ms. Frampton, thereby resolving Defendants' contention that the time she billed for travel was unreasonable. As Defendants suggested would be appropriate in their response brief, Plaintiff's counsel additionally reduced the hourly rate for the travel time incurred by Mr. Davis and Mr. Cody to 50% and 40% of

12

their normal hourly rate, respectively. Further, Plaintiff's counsel removed any hours billed by Mr. Davis for those tasks (except legal research) that Defendants argued should have been performed by less costly associates or office assistants. They also removed any hours associated with publicity, such as the time Ms. Rao spent to "review news stories and articles," which Defendants objected to as unreasonable in their response brief. Finally, Plaintiff's counsel removed any hours that Mr. Cody previously billed that related to "feedback and supervision."

This leaves the following objections by Defendants to the reasonableness of Plaintiff's counsels' fees. First, Defendants contend that it was unreasonable for Mr. Davis– rather than a less expensive attorney– to conduct 68.60 hours of legal research. This objection may carry more weight if Plaintiff had been represented by a law firm with several tiers of associates and partners. In a small non-profit office such as MPAS (that employs only four lawyers), however, it is likely that there are few if any "less expensive attorneys" available to handle the work. The Court therefore does not find Mr. Davis' hours conducting legal research unreasonable.

Second, Defendants object to the 8 hours that Mr. Davis billed to attend Oakland University Board of Trustee meetings. Plaintiff indicates in response that Mr. Davis' presence at these public meetings aided his discovery efforts and provided an opportunity to resolve Plaintiff's claims. These efforts, however, sought to resolve Plaintiff's dispute with the University through its administrative or hearing process. As such, the Court does not believe that the time Mr. Davis spent monitoring the Board of Trustee's meetings is

13

recoverable under 42 U.S.C. § 1988 or 29 U.S.C. § 794a. *See Webb v. Bd. of Educ. of Dyer County*, 471 U.S. 234, 105 S. Ct. 1923 (1985).

With respect to Ms. Rao's time for entering her appearance in this matter (.17 hours on 10/5/09), the Court does not believe that it is reasonable to include this amount in Plaintiff's award. Defendants further object to several hours that Ms. Rao billed to attend depositions conducted by other attorneys (as set forth in Exhibit 7 to their Response).[3] Of the hours listed on Exhibit 7, only 6 hours on 9/15/09 and 3 hours on 9/22/09 remain in the revised billing records and will be deducted. While Defendants also identify in Exhibit 7 an entry on 10/20/09 for 3.5 hours, that time is billed as preparation for a deposition and not actual attendance at the deposition.

Finally, Defendants contend that any fees awarded to Plaintiff should be reduced to reflect Plaintiff's lack of success with respect to his preliminary injunction motion and the claims alleged other than his FHA reasonable accommodation claim. As referred to earlier, the Supreme Court advised in *Hensley*:

> [Where a plaintiff has obtained excellent results] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

---

[3]Exhibit 7 also includes hours billed by Mr. Cody and Mr. Kay to attend depositions; however, Plaintiffs' counsel removed those hours from the revised billing records.

14

461 U.S. at 435, 103 S. Ct. 1941. While Plaintiff perhaps did not achieve every result that he sought, he prevailed in his primary goal of opening access to University housing for himself. Plaintiff asserted various claims arising from a common core of facts and based on related legal theories that were focused on the overall relief he eventually obtained. With respect to Plaintiff's preliminary injunction motion, as noted in the Court's December 23, 2009 decision, the Court probably would have reached a different result if it had reviewed the Supreme Court's decision in *Barnett*. Therefore, this Court concludes that Plaintiff's award of attorneys' fees should not be reduced to reflect limited success in this litigation.

## Conclusion

In summary, this Court concludes that, except for the following hours, the remaining hours billed by Plaintiff's counsel as set forth in their revised billing records are reasonable:

- 8 hours billed by Mr. Davis to attend Oakland University Board of Trustee meetings

- 5.7 hours billed by Mr. Davis related to unspecified "faxing, filing, and record organizing"

- 8.1 hours billed by Mr. Davis for unspecified "research, reading, review, and/or compiling information

- 9 hours billed by Ms. Rao to attend depositions

- .17 hours billed by Ms. Rao to file her appearance in this matter.

The Court further concludes that a reasonable hourly rate for Plaintiff's counsel is $200, except with respect to hours billed for traveling and that rate is $100. Based on Plaintiff's attorneys' revised billing records, this results in the following billable hours, rate, and fees (minus the same percentage discount provided by counsel in their records):

| Attorney | Hours Billed | Hourly Rate | Total | Discount | Award |
|---|---|---|---|---|---|
| Cody | 11.92 (non-travel) 3.00 (travel) | $200 (non-travel) $100 (travel) | $2,384 (non-travel) $ 300 (travel) $2,684 | $1,250[4] | $1,434 |
| Davis | 530.95 (non-travel) 17.5 (travel) | $200 (non-travel) $100 (travel) | $106,190 (non-travel) $ 1,750 (travel) $107,940 | $12,990[5] | $94,950 |
| Rao | 31 (non-travel) | $200 (non-travel) | $6,200 | $908[6] | $5292 |
| **TOTAL** | | | | | **$101,676** |

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for reasonable attorneys' fees is **GRANTED** and Plaintiff is awarded fees pursuant to 42 U.S.C. § 1988 and 29 U.S.C. § 794a in the amount of $101,676.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

---

[4]Plaintiff's counsel provided a 50% discount for 11 hours of Mr. Cody's time billed at $300/hr. and for 3 hours billed at $125/hr (travel related time) for a total discount of $1,612.50. The Court has recalculated the discount by applying the same percentage discount to the same hours but new hourly rate.

[5]Plaintiff's counsel discounted 86.4 hours of Mr. Davis' time by 50% and 29 hours of his time by 75%. Again, the Court recalculated the discount based on the revised hourly rate of $200. In comparison to Ms. Rao, *see infra* at n. 6, none of the discounted hours have been eliminated by the Court.

[6]Plaintiff's counsel discounted 18.25 hours of Ms. Rao's time by 50%, 9.17 of which this Court has deducted completely. The Court recalculated the discount based on the revised hourly rate and the remaining discounted hours.

Copies to:
Chris E. Davis, Esq.
Veena Rao, Esq.
Robert A. Boonin, Esq.
Regan K. Dahle, Esq.